IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NICHOLAS JURICH, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION 12-0176-WS-B |
| | ) |
| COMPASS MARINE, INC., et al., | ) |
| | ) |
|    Defendants. | ) |

ORDER

    This matter is before the Court on the motions to dismiss filed by defendants Compass Marine, Inc. ("Compass") and REC Marine Logistics, LLC ("REC"). (Docs. 45, 46). The interested parties have filed briefs in support of their respective positions, (Docs. 45, 47, 50-53), and the motions are ripe for resolution. After careful consideration, the Court concludes that both motions are due to be granted in part and denied in part.

BACKGROUND

    According to the first amended complaint, (Doc. 41), plaintiff Nicholas Jurich was employed by REC as a seaman. The other named plaintiffs were employed by other defendants as seamen. (*Id*., ¶¶ 4, 12). Compass is an employment placement service, and it entered agreements with each of the plaintiffs for employment placement services. In conjunction with these agreements, the plaintiffs executed two ancillary documents. First, they signed paycheck mailing agreements ("PMAs") authorizing their employers to mail their paychecks directly to Compass until Compass's fees and advances were collected in installments. Second, they signed special powers of attorney ("SPAs") authorizing Compass to endorse their paychecks and deposit them into Compass's account. Compass would retain a portion of each paycheck as an installment payment on

its fees and charges and remit the balance to the plaintiffs.  (*Id*., ¶ 6; Doc. 49, Exhibits A-C).[1]  The employer defendants did in fact mail the plaintiffs' paychecks to Compass, which did in fact deposit them in its account, retain a portion, and remit the balance to the plaintiffs.  (Doc. 41, ¶¶ 6, 9).

The first amended complaint asserts the following causes of action:

- Count One         Seaman's claim for wages (all defendants)
- Count Two         Conversion (all defendants)
- Count Three       Conspiracy (all defendants)
- Count Four        Equitable rescission of contract and restitution for money had and received (Compass)
- Count Five        Legal restitution/breach of contract (Compass)
- Count Six         Breach of fiduciary duty (Compass)
- Count Seven       RICO (all defendants)

(Doc. 41 at 4-15).  Compass and REC seek dismissal of all claims asserted against them.

**DISCUSSION**

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced.  Moreover, "a passing reference to an issue in a brief [is] insufficient to properly raise that issue," *Transamerica Leasing, Inc. v. Institute of London Underwriters*, 430 F.3d 1326, 1331 n.4 (11th Cir. 2005), and the Court will not supply legal or analytical support the parties have declined to offer themselves.

---

[1] The first amended complaint identifies these form agreements as Exhibits A-C, but they are not in fact attached to the pleading.  The plaintiffs later filed a "notice of filing exhibits," which purports to "attach Exhibits A, B and C to the First Amended Complaint."  (Doc. 49).  As the defendants make no suggestion that the exhibits did not thereby become part of the first amended complaint, the Court assumes that they did.

**I. Seaman's Claim for Wages.**

"An assignment … of wages … made before the payment of wages does not bind the party making it, except allotments authorized by section 10315 of this title." 46 U.S.C. § 11109(b). The first amended complaint alleges that the PMAs constitute assignments of wages made before payment of wages within the contemplation of Section 11109(b). (Doc. 41, ¶ 15). It further alleges that the PMAs are not authorized by Section 10315. (*Id.*, ¶ 8). The PMAs are thus non-binding on the plaintiffs. (*Id.*, ¶¶ 7, 15). Because they are unauthorized by Section 10315, they are also unlawful. (*Id.*, ¶ 8). In Count One, the plaintiffs demand from both Compass and the employers "the balance of their wages allotted and forwarded to and retained by" Compass. (*Id.*, ¶ 16).

Compass construes Count One as asserting a claim under Section 11109(b) and/or Section 10315, and it presents extensive argument that neither statute provides a private cause of action. (Doc. 47 at 1-2, 6-18; Doc. 53 at 1-5). The plaintiffs, however, disavow any statutory claim and expressly limit Count One to "a general maritime law claim for wages." (Doc. 50 at 7). Such a claim is plainly presented in the first amended complaint, which asserts that "[s]ubject matter jurisdiction is founded under the general maritime law for … a seaman's claim for wages." (Doc. 41, ¶ 3). To the uncertain extent that Count One may be construed as also asserting a statutory claim,[2] the plaintiffs have abandoned it, and any such claim is due to be dismissed on that basis.

Compass devotes its briefing to negating the existence of an implied statutory cause of action, and very little of its briefing is even potentially relevant to a claim for wages under the general maritime law ("GML"). The Court addresses below the few arguments presented by Compass that could be construed as reaching the GML wage claim.

Although the plaintiffs do not assert a statutory cause of action, "[t]he non-binding assignment rule of contractual construction contained at 46 USC 11109(b) is

---

[2] As Compass points out, (Doc. 53 at 2), the first amended complaint also asserts that "[s]ubect matter jurisdiction is founded under the general maritime law for … the enforcement of" Sections 11109(b) and 10315. (Doc. 41 at 1-2).

3

being applied vis-à-vis the remedy of a seaman's claim for wages." (Doc. 50 at 7). As noted, Count One asserts that the PMAs represent assignments of wages before payment, made non-binding by Section 11109(b). (Doc. 41, ¶ 15). According to Compass, "if the seaman fully consents to the deduction from his wage, this statute is wholly inapplicable and provides the seaman no relief." (Doc. 47 at 14). The only case on which Compass relies for this proposition did not address Section 11109(b) but only the predecessor to Section 11109(a). *In re: Williams*, 20 B.R. 154 (Bankr. E.D. Ark. 1982). Subsection (a) deals with "attachment or arrestment from any court," and the *Williams* Court ruled this provision was "designed to prevent involuntary court ordered garnishments and attachments and not the prevention of voluntary deductions." *Id*. at 154. Thus, the debtor could propose as part of his Chapter 13 plan to have a portion of his seaman's wages remitted directly from his employer to the trustee, and the Court could so order. *Id*.

The *Williams* Court cited no authority in support of its ruling, and it offered no explanation for it but only the raw conclusion quoted above. Moreover, *Williams*' voluntary-involuntary distinction is arguably dicta,[3] and no known case has ever cited *Williams* for that or any other proposition.

But even if *Williams* has any persuasive capacity in the context of Section 11109(a), it has none under Section 11109(b). By its terms, *Williams* is limited to the former context, and Compass articulates no basis for extrapolating it to the latter. On the contrary, it appears likely that a voluntary-involuntary distinction would make no sense under Section 11109(b). Unlike attachments and arrestments "from any court" under

---

[3] After the predecessor to Section 11109(a) was enacted, Congress passed a new bankruptcy code that authorized bankruptcy courts to "order any entity from whom the debtor receives income to pay all or any part of such income to the trustee." *Williams*, 20 B.R. at 154 (quoting 11 U.S.C. § 1325(c)). Because Congress, with awareness of the predecessor to Section 11109(a), did not carve out an exception to Section 1325(c) for wages owed seamen, the *Williams* Court concluded Congress deliberately extended that section to attachments and arrestments of seamen's wages. *Id*. Under this reasoning, even involuntary attachments of seamen's wages would be permissible under Section 1325(c).

Section 11109(a), assignments and sales of wages under Section 11109(b) would seem always to be the result of the seaman's voluntary action,[4] such that Compass's proposed construction might well read the provision out of practical existence – an odd fate for a statutory protection that has been in place for well over a century.[5]

Compass denies it was the employers' agent. (Doc. 47 at 17-18). This is in apparent response to the allegation of Count One that Compass "functioned as a hiring or recruiting agent for the respective employers." (Doc. 41, ¶ 16). But Count One does not limit the basis of Compass's liability to an agency theory. Instead, Count One also asserts that Compass is liable because "Plaintiffs' wages were allotted and forwarded [to Compass] with unlawful allotments being collected [by Compass]." (*Id*.). Compass in its principal brief does not address this theory of liability and thus cannot obtain dismissal regardless of the merits vel non of its agency argument.

In its reply brief, Compass questions whether a claim for wages can be maintained against a third party. (Doc. 53 at 5). No such argument appears in Compass's principal brief.[6] District courts, including this one, ordinarily do not consider arguments raised for

---

[4] The predecessor to Section 11109(b) was "intended … to prevent the seaman from disposing of his wages by assignments or otherwise." *Wilder v. Inter-Island Steam Navigation Co.*, 211 U.S. 239, 248 (1908). A seaman could not easily dispose of his own wages except voluntarily.

[5] Compass cites several other cases for the proposition that Section 11109(a) requires a judgment and attempt to garnish before the statutory protection is triggered. (Doc. 47 at 14-15). While this appears doubtful, it again has nothing to do with the protections of Section 11109(b).

[6] In its principal brief, Compass noted the plaintiffs' failure to offer a case in which Section 11109 "has ever been used offensively by a Plaintiff/seaman against a third party such as Compass." (Doc. 47 at 15). This argument fails because, as discussed in text, it is part of Compass's misperception that the plaintiff is bringing a statutory cause of action. Compass's argument in its reply brief is different, challenging the existence of any claim for wages against a third party, statutory or otherwise.

the first time on reply,[7] and Compass offers no reason the Court should depart from that rule in this case.

Even were the Court to consider Compass's tardy argument, the result would not change. Compass offers no case or other authority that precludes a GML claim for wages against a third party. Instead, Compass merely argues that certain of the cases cited in the plaintiffs' brief do not involve such a claim and therefore do not prove that such a claim exists. (Doc. 53 at 5-11). The burden at this juncture, however, is not on the plaintiffs to show that such a claim exists but on Compass to demonstrate that such a claim does not exist. Compass's presentation falls far short of doing so.[8]

As noted, the plaintiffs do not bring a statutory cause of action under Count One, but they do rely on Sections 11109(b) and 10315 to show why they are entitled to the wages their employers sent to Compass. REC seeks to explain why these statutes do not support a GML claim against it for these wages.

The only effect of Section 11109(b), REC says, is to make a seaman's pre-payment assignment of his wages (if unauthorized by Section 10315) non-binding. It does not make such an assignment illegal, and it does not make an employer's honoring

---

[7] *See Park City Water Authority v. North Fork Apartments, L.P.*, 2009 WL 4898354 at *1 n.2 (S.D. Ala. 2009) (citing cases from over 40 districts applying the rule in 2009 alone). The Eleventh Circuit follows a similar rule. *E.g., Herring v. Secretary, Department of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we have repeatedly admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted).

The Court has identified some of the reasons supporting the rule. "In order to avoid a scenario in which endless sur-reply briefs are filed, or the Court is forced to perform a litigant's research for it on a key legal issue because that party has not had an opportunity to be heard, or a movant is incentivized to save his best arguments for his reply brief so as to secure a tactical advantage based on the nonmovant's lack of opportunity to rebut them, this Court does not consider arguments raised for the first time in a reply brief." *Hardy v. Jim Walter Homes, Inc.*, 2008 WL 906455 at *8 (S.D. Ala. 2008).

[8] It is worth noting that the cases that Compass dissects are not the cases on which the plaintiff relies for the proposition that a third party can be liable under a GML wages claim. Compass discusses cases cited by the plaintiffs on pages 12-15 and 21-24 of their brief, while the cases on which the plaintiffs rely are cited on pages 7-11 of their brief.

of such an assignment improper (so long as the seaman has not notified the employer that he has exercised his option to void the assignment).  Section 10315(c) does expressly make certain allotments unlawful, but that section is part of Chapter 103, which applies only to vessels on voyages between the United States and a foreign port or between an American Atlantic port and an American Pacific port,[9] neither of which is implicated here.  Section 11109(b) does reference Section 10315, but only to identify allotments that are binding under Section 11109(b),[10] not to incorporate its "unlawful" language.  (Doc. 45 at 4-7).

      REC's argument is based solely on its reading of the two brief statutes themselves.  REC cites no cases that construe these statutes, that address other statutes concerning seamen's wages, or that discuss principles generally applicable to seamen and statutes protecting them.  REC does not, for instance, acknowledge the Supreme Court's description of the substantively similar predecessor of Section 11109(b)[11] as a statute that "*prevents* the assignment or sale of [a seaman's] wages." *Wilder v. Inter-Island Steam Navigation Co.*, 211 U.S. 239, 247 (1908) (emphasis added).[12]  Nor does REC acknowledge the Supreme Court's conclusion that the predecessor of Section 11109(a) "is not to be too narrowly construed, but rather to be liberally interpreted with a view to effecting the protection intended to be extended to a class of persons whose improvidence and prodigality have led to legislative provisions in their favor, and which has made them, as Mr. Justice Story declared, the wards of the admiralty." *Id*. at 246-47 (internal

---

[9] 46 U.S.C. § 10301.

[10] These would include allotments to certain of the seaman's relatives, to certain government agencies for the purpose of purchasing federal savings bonds, and to certain accounts opened by the seaman and maintained in his name.  46 U.S.C. § 10315(a).

[11] The predecessor statute provided that "no assignment or sale of wages, or salvage, made prior to the accruing thereof, shall bind the party making the same, except such advance securities as are authorized by this title." *Wilder*, 211 U.S. at 242.

[12] The plaintiffs quote a similar passage from *Wilder*, (Doc. 50 at 13), but REC ignores it.

quotes omitted).[13]  Nor does REC acknowledge that the *Wilder* Court applied this principle to conclude that, although the predecessor to Section 11109(a) speaks only of "attachment" and "arrestment," and although "[n]either of the words …, considered literally, has reference to executions or proceedings in aid of execution to subject property to the payment of judgments," the statute nevertheless would be construed to include post-judgment proceedings in aid of execution.  *Id*. at 246, 249.  REC's analysis of Section 11109(b), presented in a vacuum divorced from such considerations, is on that account unequal to the task.

REC's only other argument as to Count One is that the first amended complaint does not allege facts sufficient to show that REC is liable to the plaintiff under a theory that it is Compass's principal.  (Doc. 45 at 7-8).  But Count One does not appear to base REC's liability on agency principles.  Instead, it asserts that REC "had notice that [Jurich] had irrevocably assigned, advances and wages before paid, to Compass Marine, … pursuant to which [assignment] [REC] unlawfully collected and allotted and forwarded Plaintiffs' payroll checks to Compass Marine."  (Doc. 41, ¶ 15).  Again, REC "mailed [Jurich's] payroll checks to [its] hiring agent, Compass Marine, with full knowledge of the [PMAs] being based on a non-binding, yet irrevocable assignment of wages before paid resulting in unlawful allotments."  (*Id*., ¶ 16).  These allegations emphasize REC's own fault, not the fault of Compass vicariously placed upon REC via agency principles.  Even if Count One does advance an agency argument in support of REC's liability, it is not the only basis of liability advanced, and REC cannot obtain dismissal without adequately addressing all such bases.

---

[13] The plaintiffs specifically rely on this quote, (Doc. 50 at 13), but REC brushes it aside as "obscur[ing] the true issue here."  (Doc. 52 at 2).  On the contrary, the Supreme Court expressly made such considerations relevant to the construction of Section 11109(a), and it can scarcely be relevant to that subsection yet irrelevant to Section 11109(b).  This is especially so given that, in 1908, what is now subsection (b) was part of the same sentence as what is now subsection (a).  *Wilder*, 211 U.S. at 242.

For the reasons set forth above, Compass and REC are entitled to dismissal of Count One to the extent it purports to assert a statutory cause of action, but neither is entitled to dismissal of the plaintiffs' GML claim.

## II. Conversion.

Count Two alleges that Compass took possession of the plaintiffs' paychecks and thereby converted them, and it asserts that the employers are liable for the conversion as Compass's principal. (Doc. 41 at 6).

Compass first argues that the Court lacks subject matter jurisdiction over this claim because it does not implicate the Court's admiralty jurisdiction. (Doc. 47 at 18; Doc. 53 at 12-13). Perhaps not, but Count One does. Count Seven, moreover, is brought directly under a federal statute.

With exceptions not applicable here, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The conversion claim is based on the same conduct as the wages claim and plainly constitutes part of the same case or controversy. The district courts have original jurisdiction over both admiralty claims and federal questions, 28 U.S.C. §§ 1331, 1333, and the first amended complaint invokes both statutes. (Doc. 41, ¶ 1).

Both the first amended complaint and the plaintiffs' brief assert supplemental jurisdiction under Section 1367. (Doc. 41, ¶ 1; Doc. 50 at 32). Absent argument to the contrary, the Court easily concludes that Section 1367(a) applies and bestows subject matter jurisdiction over Count Two.

The parties agree that this claim is governed by Alabama law. (Doc. 47 at 19; Doc. 50 at 30). "Four different actions may constitute conversion: a wrongful taking, a wrongful detention, an illegal assumption of ownership, or an illegal use or misuse."

*Jones v. DCH Health Care Authority*, 621 So. 2d 1322, 1323 (Ala. 1993) (internal quotes omitted). "A demand is only necessary in those cases … where the property has come into the possession of the defendant by consent of the plaintiff, and the plaintiff relies on the wrongful detention of the property by the defendant to sustain his action." *Dunn v. Williams*, 28 So. 3d 807, 815 (Ala. Civ. App. 2009) (internal quotes omitted).

Compass argues that the plaintiffs are required to prove demand and that the first amended complaint negates that element of their claim. (Doc. 47 at 18-19). The Court agrees with the latter proposition. By alleging that, "[f]or Plaintiffs to demand return of said illegal takings sans this litigation would be an exercise in futility," (Doc. 41, ¶ 19), the plaintiffs concede they made no such demand.[14] The question is whether, given the first amended complaint, Compass has demonstrated that Alabama law requires the plaintiffs to have made such demand as an element or condition of recovery on a conversion claim.

Compass argues that the plaintiffs voluntarily entered the PMAs and thereby consented to Compass's receipt of their paychecks. If the first amended complaint limited the conversion claim to the "wrongful detention" prong of the tort, Compass would prevail. But it does not. The first amended complaint explicitly alleges that demand "is unnecessary because in collecting an illegal allotment, Compass Marine is an illegal user of Plaintiff's wages …." (Doc. 41, ¶ 19). The first amended complaint thereby invokes the "illegal use or misuse" prong of the tort, as to which demand is

---

[14] In opposition to Compass's motion to dismiss, the plaintiffs submit a pre-litigation e-mail message to their counsel from counsel for Compass, which reports that the plaintiff has contacted several of Compass's employees and threatened to "blow your head off." (Doc. 50, O'Bryan Declaration, Exhibit C). This document cannot be considered on a motion under Rule 12(b)(6). *See generally Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (identifying the narrow range of documents that may be considered on a Rule 12(b) motion). The Court could consider the document and thereby convert the motion into one for summary judgment, Fed. R. Civ. P. 12(d), but the Court has not done so. *See Harper v. Lawrence County*, 592 F.3d 1227, 1232 (11th Cir. 2010) (a court "exclude[s]" material under Rule 12(d) simply by not considering it).

unnecessary.[15]  Despite this clear allegation, and despite the plaintiffs' repetition of it in their responsive brief, (Doc. 50 at 33), Compass has not addressed the allegation.  Without doing so, it cannot obtain dismissal of the conversion claim based on a failure to make demand.

In a related vein, Compass argues that consent is a "perfect defense" to a conversion claim and that "non-consent is actually an element of a conversion claim."[16]  Exhibits A-C, it argues, "clearly establish[h] that the Plaintiffs consented to the monies being paid to Compass."  Whether as defense or element, Compass concludes that the plaintiffs' manifested consent precludes a viable conversion claim.  (Doc. 47 at 19-21).  As discussed above, however, the plaintiffs rely on the "illegal user" prong of the tort, not (or not only) the wrongful detention prong.  Compass has not addressed this prong and thus has not demonstrated that initial consent, later withdrawn by words or conduct short of a formal demand for return,[17] is fatal to a conversion claim based on illegal use.

As noted, Count Two expressly limits REC's liability to that of a principal responsible for the torts of its agent.  The plaintiffs concede their claim against REC for conversion "is dependent upon a principal/agency relationship."  (Doc. 51 at 6).  REC argues that "there are no facts alleged [in the first amended complaint] from which such a relationship could be inferred."  (Doc. 45 at 7; *accord id*. at 8-9).

"The test for agency is whether the alleged principal has retained a right of control over the actions of the alleged agent."  *Dickinson v. City of Huntsville*, 822 So. 2d 411, 416 (Ala. 2001) (internal quotes omitted).  The parties agree that REC's potential liability

---

[15] "If the plaintiff can show an illegal user or misuser, a demand and refusal is not essential to the right of recovery in conversion."  *Jones*, 621 So. 2d at 1324.

[16] Compass relies on two Supreme Court cases for this proposition.  *See Jones*, 621 So. 2d at 1324 ("In order to constitute conversion, nonconsent to the possession and the disposition of the property by defendant is indispensable.") (internal quotes omitted); *Vandenberg v. Aramark Educational Services, Inc.*, 81 So. 3d 326, 343 (Ala. 2011) (quoting *Jones*).

[17] Compass has shown that that the first amended complaint negates a formal demand, but it has not attempted to show that it negates any lesser showing of non-consent.

under Count Two requires that REC retained control over Compass's actions with respect to the plaintiffs' paychecks. (Doc. 45 at 7-8; Doc. 51 at 5-6).

To show that they have adequately pleaded agency, the plaintiffs rely on two paragraphs of the first amended complaint. (Doc. 51 at 5-6). The first alleges only that Compass "has hundreds of employers spanning the globe depending on it to find the right man or women [sic] to fill their specific crewing needs." (Doc. 41, ¶ 5). The other is a bit more substantive: "Compass Marine had implied or express authority to act as said employer's crewing agent, and was, therefore, its recruiting or hiring agent. The respective employers controlled Compass Marine by processing the unlawful allotments whereby had they not, Compass Marine would have been unable to continue its collection thereof." (*Id.*, ¶ 9).

It is plain from this allegation that the plaintiffs' allegation of REC's control is based exclusively on the mere fact that the employers sent Compass the plaintiffs' paychecks in accordance with the PMAs. The plaintiffs confirm that this allegation stands for no more than the proposition that the employers "controlled Compass Marine … by accepting and complying with the 'irrevocable' [PMAs] by mailing crewmembers' wages to Compass Marine." (Doc. 51 at 5). The plaintiffs' theory of "control" is reduced to this: "But for the respective employers' willingness to play ball, the illicit practice [of Compass] would end. That is control." (*Id.* at 6).

Under the plaintiffs' theory of control, American drug users control the illicit South and Central American drug trade, because without American demand for illegal drugs, the trade would dry up. Thus, all American users of illegal drugs are the principals of the drug lords south of the border and are legally responsible for all their reprehensible conduct. Of course this is absurd, but it is not the Court's vision of a parade of horribles that might flow from accepting the plaintiffs' position. It is, instead, the precise example of control the plaintiffs expressly offer as supporting their position, (Doc. 50 at 8-9; Doc. 51 at 5-6), and it well illustrates the legal bankruptcy of their position.

Because REC's liability under Count Two depends on its status as Compass's principal; because that status depends on REC's control of Compass; and because the first amended complaint's only allegation of such control is legally inadequate to support an agency relationship, REC is entitled to dismissal of this claim.

### III. Conspiracy.

Count Three alleges that the defendants conspired to have the plaintiffs' paychecks sent to Compass per the PMAs in order for Compass to endorse them per the SPAs and unlawfully collect and allot from the paychecks a portion of their wages in payment of Compass's fee and reimbursement of certain advancements per the employment placement contracts, with such conduct constituting a breach of fiduciary duty and the collection of unlawful allotments. (Doc. 41, ¶ 23).

Stated in its entirety, Compass's single argument in opposition to Count Three is that, "[b]ecause the Plaintiffs have no underlying cause of action against Compass, it is respectfully submitted that Plaintiff also has no conspiracy claim against Compass." (Doc. 47 at 18). By no underlying cause of action, Compass refers to Count One. (*Id.*). Since, as discussed in Part I, Compass has not demonstrated its entitlement to dismissal of Count One, it likewise has not demonstrated its entitlement to dismissal of Count Three.

REC takes a different and more fruitful tack. "The essence of a conspiracy is an agreement, a meeting of the minds between the conspirators." *First Bank of Childersburg v. Florey*, 676 So. 2d 324, 327 (Ala. Civ. App. 1996). REC asserts that the first amended complaint does not provide facts plausibly supporting the allegation that it reached such an agreement with Compass, as required by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). (Doc. 45 at 9-10).

Under *Iqbal*, and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the complaint must allege sufficient facts to render the actual existence of a conspiracy plausible. *Id*. at 566; *American Dental Association v. Cigna Corp.*, 605 F.3d 1283, 1294

(11th Cir. 2010). "[W]holly conclusory allegations of conspiracy" must be disregarded, including such assertions as that the defendants acted "as part of a common scheme and conspiracy" or that the defendants "agreed to the overall objective of the conspiracy." *Id*. at 1293. "These are the kinds of 'formulaic recitations' of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient." *Id*. at 1294.

Count Three alleges simply that "Compass Marine conspired with the respective employers," (Doc. 41, ¶ 23), without offering any underlying facts making plausible its assertion of a conspiracy. The plaintiffs in their responsive briefs point to no other factual allegations in the first amended complaint that could supply the necessary plausibility. Accordingly, REC is entitled to dismissal of this claim.

**IV. Equitable Rescission of Contract and Restitution for Money Had and Received.**

Count Four alleges that there is no mutuality of obligation in the PMAs because Compass is not obligated to do anything; that the contracts are thus illusory; that Compass has been unjustly enriched by collecting payments via illusory, non-binding PMAs; that Compass has been unjustly enriched by collecting payments via PMAs with overreaching and unlawful terms; and that, in equity and good conscience, the monies Compass received should be returned and the PMAs rescinded. (Doc. 41, ¶ 26).

Compass devotes most of its attention to challenging the existence of admiralty jurisdiction over this claim. (Doc. 47 at 21-23; Doc. 53 at 14-15). For reasons set forth in Part II, the Court pretermits consideration of this argument, since the first amended complaint asserts supplemental jurisdiction over this claim, (Doc. 41, ¶ 1), a facially reasonable proposition that Compass leaves unaddressed.

Out of the tangled mass of allegations in Count Four, Compass focuses exclusively on lack of consideration. Its argument along these lines is inadequate because it fails to identify or apply the governing legal principles. Compass also ignores the alternative allegations that the PMAs should be rescinded due to overreaching and unlawfulness. The plaintiffs pointed out this failure, (Doc. 50 at 35), yet Compass did

not address these allegations even in its reply brief.  (Doc. 53 at 14-15).  Since Compass has not shown the plaintiffs' inability to establish a claim under Count Four under any of the various theories embedded therein, it is not entitled to dismissal of this claim.

## V.  Legal Restitution/Breach of Contract.

Count Five alleges that, because the SPAs may be exercised only for lawful purposes, and because the allotments accomplished by Compass are unlawful, Compass is in breach of any contract established by Exhibits A-C.  (Doc. 41, ¶ 29).

Compass again denies the existence of admiralty jurisdiction without addressing the existence of supplemental jurisdiction, (Doc. 47 at 21-23), obviating consideration of its argument.

Compass makes no other argument with respect to Count Five.  (Doc. 47 at 21-23; Doc. 53 at 14-15).  Compass therefore is not entitled to dismissal of this claim.

## VI.  Breach of Fiduciary Duty.

Count Six alleges that the SPAs gave rise to a fiduciary duty running from Compass to the plaintiffs and that Compass breached its fiduciary duty by:  (1) using the SPAs for unlawful purposes; (2) fraudulently concealing and/or failing to disclose that the allotments were unlawful; and (3) fraudulently concealing and/or failing to disclose that it was operating under a conflict of interest based on competing loyalties to the plaintiffs and to their employers.  (Doc. 41, ¶¶ 33-35).

Compass's challenge to the existence of admiralty jurisdiction over this claim, (Doc. 47 at 23-24), fails for familiar reasons.  On the merits, Compass describes the plaintiffs' claim as "frivolous" and "ridiculous."  (Doc. 47 at 24, 25).  Motions to dismiss, however, are not won by tossing out loaded adjectives.[18]

---

[18] Nor by accusing plaintiffs and their counsel of "attempting to abuse the judicial process."  (Doc. 47 at 27).

Compass asserts, without authority or any serious explanation, that it cannot have breached a fiduciary duty not to use the SPAs for unlawful purposes, because it only did what the SPAs, PMAs, and employment placement contracts authorized it to do. (*Id*. at 24). But the first amended complaint alleges that the SPAs by their terms permit Compass only to perform "lawful" acts, and it further alleges that Compass's conduct was unlawful. (Doc. 41, ¶¶ 33, 35).

The PMAs prepared by Compass declared that they were "irrevocable," (Doc. 49, Exhibit B), even though Section 11109(b) renders assignments of wages before payment non-binding on the plaintiffs and therefore necessarily voidable. Compass argues that it could not have fraudulently concealed the inaccuracy of its representation of irrevocability, because "ignorance of the law is no excuse." (Doc. 47 at 24-25). Compass cites no authority for the proposition that one cannot breach a fiduciary duty owed another by misrepresenting the law and failing to disclose the misrepresentation, and the mere quotation of aphorisms does not supply the deficiency.

Compass raises no other challenges to Count Six.[19] Because those it has raised fail, Compass is not entitled to dismissal of this count.

## VII.  RICO.

"Because Plaintiffs' section 1962(c) claim is based on an alleged pattern of racketeering consisting entirely of the predicate acts of mail … fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard …." *American Dental*, 605 F.3d at 1291. A RICO conspiracy claim under Section 1962(d) is subject to the same requirements. *Id*. at 1293.

---

[19] In its reply brief, Compass adds as a new argument that it was not the employers' agent. (Doc. 53 at 15). As explained in Part I, arguments first raised in reply will not be considered. At any rate, Compass has not explained how its assertion, even if considered and accepted, could require the dismissal of Count Six.

Both Compass and REC have pointed out the failure of Count Seven to satisfy these pleading requirements. (Doc. 45 at 10-11; Doc. 47 at 25-27). The plaintiffs ignore these objections, choosing to explain their claim rather than identify how its actual allegations satisfy their pleading responsibility. (Doc. 50 at 38-41; Doc. 51 at 7). This is insufficient to stave off dismissal.

## CONCLUSION

The first amended complaint contains unusual and inartfully crafted claims, and all parties have been challenged in their efforts to effectively address them. The Court sympathizes, but it cannot on that basis or any other abandon its obligation to consider only the arguments presented and to credit only those properly supported. This order does not definitely resolve the legal or factual adequacy of the plaintiffs' remaining claims but establishes only that, as to such claims, the defendants have not met their stringent burden on motion to dismiss.

For the reasons set forth above, Compass's motion to dismiss is: **granted** with respect to Count One, to the extent that count purports to advance a statutory cause of action; and **granted** with respect to Count Seven. In all other respects, Compass's motion to dismiss is **denied**.

For the reasons set forth above, REC's motion to dismiss is: **granted** with respect to Count One, to the extent that count purports to advance a statutory cause of action; and **granted** with respect to Counts Two, Three and Seven. In all other respects, REC's motion to dismiss is **denied**.

The counts and portions of counts identified in the preceding two paragraphs are **dismissed**.

DONE and ORDERED this 2nd day of November, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE